J.H. CHAPMAN GROUP, LTD., Plaintiff-Appellee, v. PITA BAKING COM-
PANY, Defendant-Appellant.

First District (1st Division)   No. 1—89—2818

Opinion filed November 5, 1990.

Norman H. Lesser, of Chicago, and James K. McCabe, of Brookfield, for
appellant.

Feiwell, Galper & Lasky, Ltd., of Chicago (William H. Hrabak, Jr., of
counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

J.H. Chapman Group sued Pita Baking Company to recover a commission for brokering the sale of Pita's business, and an additional commission for renegotiating a lease for a gyros manufacturing operation belonging to Pita's owners and locating a new facility for that operation. Pita refused to pay the commissions, arguing that Chapman Group could not collect a fee for the sale of a business which held any real estate interest because it held no real estate broker's license. The trial court entered a directed verdict in Pita's favor with respect to the additional commission, and after a jury verdict, entered a judgment in favor of Chapman Group with respect to the original commission. For the reasons below, we affirm.

J.H. Chapman Group brokers the sale of businesses and initiates mergers, acquisitions, and leveraged buyouts. Chapman Group was originally organized as a partnership, J.H. Chapman Group, and in 1982 reorganized as a corporation, J.H. Chapman Group, Limited.

In December 1981, Chapman Group was retained by Pita Baking Company to find a purchaser for the sale of Pita's business. Pita agreed to pay a commission of $75,000. Chapman Group was originally retained for one year, but the parties later extended the contract to May 1984.

Pita's owners also owned a gyros manufacturing plant, and in September 1982, the parties entered into an additional agreement, requiring Chapman Group to find a new facility for the gyros manufacturing operation and renegotiate that operation's present lease. For the additional services, Chapman Group was to receive an additional $10,000.

In November 1982, Chapman Group brought together Pita and DCA Food Industries, Inc. which is not a party to this appeal. Meetings and negotiations for the sale of Pita were carried out over the next six months. After the general terms were negotiated, Pita continued to deal with DCA without Chapman Group.

In December 1984, Pita agreed to sell its business to DCA for an amount exceeding $800,000. The sale included no real estate interest, although it was contingent upon DCA obtaining a lease on the property where Pita's factory stood. Chapman Group had no responsibility for obtaining the lease for DCA. After the sale was completed, Pita refused Chapman Group's demands for payment. Chapman Group sued Pita, alleging breach of both the original contract and the additional agreement.

At trial, Norman Chapman, president of Chapman Group, testified that no one at Chapman Group held a real estate broker's license and,

further, that the corporation Chapman Group, Limited, was the "successor in interest" to the former partnership known as J.H. Chapman Group. Pita presented no evidence to rebut Mr. Chapman.

Pita moved for a directed verdict, arguing that pursuant to the Real Estate License Act of 1983 (Ill. Rev. Stat. 1989, ch. 111, par. 5807), Chapman Group could not collect a fee for the sale of a business which held any real estate interest because it held no real estate broker's license. Pita also argued that the Chapman Group corporation had not proved an assignment of interests of the contracting party, the Chapman Group partnership.

Pita moved for a directed verdict on both agreements. The trial court denied Pita's motion with respect to the original contract, but entered a directed verdict with respect to the additional agreement. The trial court further rejected Pita's argument that Chapman Group had failed to plead and prove an assignment of interest. The jury returned a verdict in favor of Chapman Group for $75,000, and judgment was entered. Pita appeals.

■■ The Real Estate License Act (RELA), and its predecessor, the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1981, ch. 111, par. 5714 (repealed by Pub. Act 83–191, §23, eff. January 1, 1984)), prohibit the recovery of compensation for acting or serving as a real estate broker without a properly issued broker's license. (Ill. Rev. Stat. 1989, ch. 111, par. 5807.) Extrapolating from the statutory prohibition, Pita urges that RELA be broadly applied to prohibit an unlicensed person from recovering compensation for brokering any transaction that involves *any* real estate interest. Chapman Group counters that RELA should apply only where real estate interests comprise a substantial part of the transaction.

■ Here, however, it is unnecessary to determine the applicability of RELA to transactions involving both real estate and non-real-estate interests, because the facts show that the two agreements between Pita and Chapman Group were separate and distinct. Pita originally retained Chapman Group to locate a buyer for the sale of its business and agreed to pay a commission of $75,000. The price of the sale exceeded $800,000, and no value was placed on Pita's month-to-month tenancy. No other real estate interests were involved. The additional agreement, made nine months after the first and providing an additional $10,000 commission, required Chapman Group to locate an alternative facility for the separate gyros manufacturing operation and renegotiate Pita's lease for that operation's existing facility.

Thus, RELA, which is intended to "evaluate the competency of persons engaged in the real estate business and to regulate such busi-

ness for the protection of the public" (Ill. Rev. Stat. 1989, ch. 111, par. 5801), applied to the additional agreement, which involved real estate entirely, but did not apply to the original agreement, which involved no real estate interests. The trial court correctly ruled on the separate agreements, entering judgment on the original agreement and denying the commission for the additional agreement.

■ Pita further argues that RELA applied because Chapman Group brought DCA to Pita knowing that DCA would need to negotiate a lease with Pita's landlord to execute its contract with Pita. But Pita fails to explain how a broker's license held by Chapman Group could have benefitted lease negotiations that DCA undertook on its own behalf with another third party, where Chapman Group was utterly unconnected to negotiations, and the negotiations involved no real estate interest belonging to Pita. The mere knowledge that a party to a brokered transaction may conduct ancillary transactions with a third party involving its own real estate interests is not sufficient, absent any connection with the broker to the ancillary transaction, to bar an unlicensed broker from collecting his commission.

■ Finally, Pita argues without merit that Chapman Group failed to allege and prove that its corporate entity was a successor in interest to the Chapman Group partnership, which was the contracting entity. The complaint, however, states that Chapman Group, Limited, was a successor in interest, and Mr. Chapman's testimony was unrebutted. Pita's quibble over the term "successor" is an argument of form over substance. The rulings of the trial court were correct, and accordingly, we affirm.

Affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.